IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY § | | |
| AS SUBROGEE OF § | | |
| MICHAEL AND HOLLY CROCKETT, § | | |
| Plaintiff, § | | |
| § | Civil Action No. 4:16-c v-00387-JLH | |
| vs. § | Jury Requested | |
| § | | |
| OMEGA FLEX, INC § | | |
| Defendant. § | | |

## PLAINTIFF'S COUNTER-STATEMENT OF CONTESTED MATERIAL FACTS

NOW COMES the Plaintiff, State Farm Fire and Casualty as Subrogee of Michael and Holly Crockett, pursuant to local rule 56.1(b) and in Response and Opposition to the Defendant's Statement of Uncontested Material Facts, submits the following Counter-Statement of Contested Material Facts:

1. On May 9, 2015, a thunderstorm moved through the area of the Crockett home, accompanied by rain and lightning. (Doc. 48, Plaintiff's First Amended Complaint, at ¶8; Doc No. 68-5 at vii; Doc 68-15 at p. 2, 5);

2. During the course of this storm, electrical energy from an indirect lightning strike entered the Crockett home.  (Doc No. 68-4 at p. SF-004774; Doc No. 68-15 at p. 2; Doc No. 66-1 at 54:1-8, 131:8-9)

3. The Crockett fire is consistent with an indirect lighting strike which caused a breach in the incoming TracPipe CSST supply line in the crawlspace below the floor of the northwest sector library/office area.  (Doc No. 68-4 at p. SF 004774).

4. The room of fire origin, as witnessed by Mr. Crockett and based on the fire investigation, is the study, more specifically to the right of the study fireplace below the floorboards or the crawlspace. (Doc No. 68-3 at 25:9-25).

5. The ignition source for this fire is electrical arcing/heat energy in between the CSST supply line and metal HVAC duct work, which was caused by an indirect lighting strike near the residence. (Doc No. 68-4 at p. SF 004774).

6. The parties agree that an electrical arcing event formed the melting hole (Hole 1A) found post-fire in the TracPipe CSST supply line at the Crockett residence. (Doc No. 68-3 at 54:15-55:11 (the "melt" around the perforation indicates that the mechanism of hole formation "was clearly electrical and sufficient to cause melting of stainless steel which does not occur in typical combustible fuel fire."); (Doc No. 68-5 at p. 29) ("In addition to the corrosion holes, a single hole in the CSST showed evidence of molten and re-solidified metal . . . As the heat from a typical residential fire is insufficient to melt stainless steel, this melting hole was formed by electrical arcing.").

7. The perforation in the CSST in the crawl space to the right of the fireplace was consistent with a thermal event as opposed to chemical, like corrosion. And the thermal event was further identified as being electrical from lightning induced damage as opposed to electrical from any contact with a conductor inside the home. (Doc No. 68-3 at 51:23-52:9).

8. Other than the electrical current from an indirect lightning strike, there were no electrical or other type of potential ignition source found within the identified area of fire origin during the removal of the debris and processing of the fire scene. (Doc No. 68-4 at p. SF 004774; Doc No. 68-3 at 29:23-30:5; and Doc No. 67-10)

9. Due to proximity, location, orientation, and size of the fire, it is physically impossible for the residential electrical conductors to come in contact with the CSST at hole location 1A, those conductors would have been de-energized long before any physical contact between them and the CSST.  (Doc No. 68-3 at 67:23-68:2, 168:16-169:9).

10. There is chemical evidence of zinc in the area of the opening (Hole 1A), which would be consistent with an arcing event to the HVAC ducting which was in the area of the CSST.  (Doc No. 68-3 at 58:10-58:15).

11. There is chemical evidence of aluminum in the area of the opening (Hole 1A), the most likely source of aluminum in this case is the foil from the insulation in the area.  (Doc No. 68-3 at 70:25-71:10)

12. There was some copper found around the area of the perforation, but it's entirely consistent with the melt and the chemistry of the CSST.  (Doc No. 68-3 at 58:16-21).

13. The "virgin" CSST material that was installed in the Crockett residence contained 0.48% copper by weight.  (Doc No. 67-8).

14. Copper is present in low concentrations in CSST.  The presence of copper at Hole 1A is not evidence, that there was metal transferred from household electrical that caused that damage. (Doc No. 68-3 at 157:15-158:1).

15. Dr. Kytomaa, performed ICP testing on a sample of TracPipe CSST which resulted in a concentration of copper of 0.43% by weight.  (Doc No. 67-7; and Doc No. 67-6 at 72:3-73:13).

16. Had Hole 1A been created by household electrical and not lightning, there would be evidence of metal transfer in concentrations far in excess of the base chemistry of CSST.  (Doc No. 68-3 at 103:13-24).

17.     The stainless steel melt around hole 1A, in and of itself, or the jacket that smoldered, burned, or glowed in the area of that same melt served as competent ignition sources for the escaping gas. (Doc No. 68-3 at 82:7-82:15).

18.     The peak temperature from an arcing event reaches over 1,400 degrees Celsius.  If natural gas ignites at 600 degrees Celsius, the temperature of the melt around the hole was greater than the ignition temperature of gas for at least 3 seconds. (Doc No. 68-3 at 83:21-84:3).

19.     The fire in the Crockett home was caused when the arc hole (1A) in the gas piping was created, which permitted the natural gas within the TracPipe CSST to escape and was ignited during the arc event. (Doc No. 68-15 at p. 2; and Doc No. 68-3 at 152:11-21).

**Warnings**

20.     Mr. Crockett and Mrs. Crockett had never heard of CSST prior to the fire that occurred on May 9, 2015, and they were not aware CSST was installed in their home. (Doc No. 68-8 at 195:9-15; and Doc No. 68-9 at 106:21-107:15 and 108:1-3).

21.     Mr. Crockett and Mrs. Crocket never received any warnings or communications from Omega Flex, Inc., or any other source, regarding the CSST installed in their home. (Doc No. 68-8 at 195:16-196:9; and Doc No. 68-9 at 107:16–108:6).

22.     Homeowners don't receive the Omega Flex Design and Installation Guide ("D&I Guide"). (Doc No. 68-10 at 43:20-25 and 154:19-25).

23.     The CSST product itself does not contain any warnings, but Omega Flex could have put a warning regarding bonding and grounding on the TracPipe material itself because Omega Flex controls the content of language written on the outside of the CSST. (Doc No. 68-10 at 152:23-154:14).

24. The December 2005 D&I Guide that was applicable to the installation of the CSST in the Crockett residence, does not provide any warnings with regard to the fact that CSST can be bonded and grounded and still have arc damage due to lightning and proximity to other metallic systems. (Doc No. 68-10 at 82:18-83:9).

**Omega Flex's Knowledge of the dangers of CSST**

25. As of November 27, 2000, Omega Flex had confirmed that TracPipe CSST was capable of being punctured by lightning. (Doc No. 68-6; and Doc No. 68-7 at 13:19-14:4 and 15:6-11).

26. Omega Flex is aware of situations where an indirect lighting strike caused perforation to yellow jacketed CSST, even though the system was properly bonded and grounded pursuant to Omega Flex's TracPipe D&I Guide. (Doc No. 68-10 at 95:20-25).

27. Bonding and grounding is not always an effective means of protecting yellow jacketed CSST from lighting, as it does not prevent all lightning house fires. (Doc No. 68-10 at 96:25-97:7).

28. The addition of a six-gauge bonding and grounding conductor and independent bonding clamp to Omega Flex TracPipe CSST will not eliminate all dangers from lightning. (Doc No. 68-10 at 95:1-7).

**Bonding and Grounding**

29. Prior to 2007, Omega Flex had not performed any testing to validate bonding and grounding as an effective means of protecting TracPipe yellow jacketed CSST from damage due to lightning. (Doc No. 68-10 at 170:17-171:5).

30. The Code Committee for the NEC has clearly stated that the purpose of bonding is to protect against electric shock in the event that the piping system inadvertently becomes energized by a short circuit, it is not intended to protect against lightning. (Doc No. 68-12 at 65:12-66:18; and Doc No. 68-10 at 71:7-20).

31. The "bonding" as described and depicted in Figure 4-21 of Section 4.10 "Electrical Bonding/Grounding" in the January 2005 Omega Flex D&I Guide was not a requirement of either the 1999, 2002, or the 2005 National Electric Code. (Doc No. 68-15 at p.2).

32. The grounding/bonding of the gas system in the Crockett residence, per the NEC, would have been properly accomplished by the grounding of a gas fired appliance, such as a gas furnace or a gas stove with electric ignition. (Doc No. 68-11 at p. 3; and Doc No. 68-12 at 23:18 – 24:15).

33. In this case, the Crockett residence had four gas fired electrical appliances as having Equipment Grounding Conductors (EGC). Any of these four appliances singularly would satisfy the bonding requirements for the NEC, which are contained in Article 250.1048 of the NEC (Doc No. 68-11 at p. 3; and Doc No. 68-12 at 23:18–24:15).

34. The CSST installed in the Crockett residence was properly installed pursuant to the 2005 National Electric Code, the 2002 National Fuel Gas Code, the 1995 Arkansas Gas Code and the 2002 National Fuel Gas Code. (Doc No. 68-15 at p. 2; and Doc No. 68-12 at 99:24-100:6).

35. Bonding TracPipe CSST in accordance with the D&I Guide does not always prevent electrical arcing from creating a perforation in the CSST. (Doc No. 68-15 at p. 8).

**Design and Installation Guide**

36. The National Electric Code makes no reference to "direct bonding." (Doc No. 68-12 at 66:19-23).

37. The instructions in the D&I Guide regarding the use of a bonding clamp and so called "direct bonding" is confusing and can be read in two ways. One way to interpret the D&I Guide is to read it to mean that the use of the direct bonding scheme must be followed. A second way to interpret the D&I Guide it to read it to mean that the requirements of the NEC must be met, and that the use of direct bonding is just one way of achieving bonding per the NEC, and that if this

method is chosen the clamp should not be attached to the corrugated services. (Doc No. 68-11 at p. 4; and Doc No. 68-12 at 64:5-17).

**National Yellow CSST Safety Campaign**

38. The purpose of the National Yellow CSST Safety Campaign was to give notice to legacy homeowners like the Crocketts, who already had CSST installed in their homes, of the propensity for CSST to be damaged by lightning. (Doc No. 68-10 at 162:7-20).

39. Omega Flex has absolutely no means of tracking in which homes its CSST products are installed, or to have the National Yellow CSST Safety Campaign targeted to a specific homeowner. (Doc No. 68-10 at 158:19-159:11; 159:22-160:2 and 162:22-163:8).

40. The National Yellow CSST Safety Campaign was undertaken in every state. (Doc No. 68-10 at 163:9-12).

41. Arkansas is within the top quarter of U.S. national lightning frequency. (Doc No. 68-10 at 164:25-165:1).

42. The Yellow CSST Safety Campaign Activity Update/Actions do not identify a single activity taken in the state of Arkansas to reach out to consumers like the Crocketts. (Doc No. 68-10 at 167:22-168:1; Doc No. 68-16 and Doc No. 68-17).

43. The National Yellow CSST Safety Campaign was not effective in providing warnings to Michael Crockett or Holly Crockett. (Doc No. 68-8 at 195:16-196:9; and Doc No. 68-9 at 107:16–108:6) (testifying that they never received any warnings or communications from Omega Flex, Inc., or any other source).

**State Farm's Subrogation Claims Against Omega Flex**

44. As a result of the fire, the Crocket residence – and the contents contained therein—suffered severe heat, smoke and water damage. (Doc 48 at ¶¶8, 11).

45. Pursuant to a homeowner's insurance policy in effect on the date of loss, State Farm reimbursed the Crocketts for the covered damages they incurred as a result of the fire in question. (Doc 48 at ¶11).

46. Omega Flex is liable to it under theories of negligence and strict product liability for selling and manufacturing defective TracPipe CST and for failing to warn the Crocketts and intermediaries of the hazards associated with the defective produce. (Doc 48).

47. Omega Flex breached the duty it owed to the Crocketts by "failing to warn the public, including Michael or Holly Crockett, of the defective condition of the CSST product, which it knew created an unreasonable risk of harm to real and personal property, and/or failed to warn the public and Plaintiff that the CSST product was prone to fail when subjected to the electrical charge emitted from a lightning strike." ((Doc 48 at ¶14).

48. Omega Flex breached the duty it owned to the Crocketts in "failing to warn consumers, including Michael and/or Holly Crockett, and intermediaries that the failure of its CSST product can cause fires." (Doc 48 at ¶14).

49. Omega Flex is strictly liable to State Farm for its damages in that Omega Flex failed to give adequate warnings of the products dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed. (Doc 48 at ¶¶22, 23).

Respectfully submitted,

By:    */s/ Craig M. Schumacher*
        **Craig M. Schumacher**
        Arkansas Bar No. 2015106
        Texas Bar No. 00791622
        *Cschumacher@cstriallaw.com*
        **CARPENTER & SCHUMACHER, P.C.**
        Parkway Centre IV
        2701 North Dallas Parkway, Suite 570
        Plano, Texas 75093
        (972) 403-1133
        Fax (972) 403-0311
*ATTORNEYS FOR PLAINTIFF*
*STATE FARM FIRE AND CASUALTY AS SUBROGEE OF MICHAEL AND HOLLY CROCKETT*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served, in accordance with the Federal Rules of Civil Procedure, upon the following counsel on the __22nd__ day of January, 2018:

James D. Robertson
Breana Ott Mackey
BARBER LAW FIRM PLLC
3400 Simmons Tower
425 West Capitol Avenue
Little Rock, AR 72201-3414
**and**

Erin W. Grewe
CAMPBELL, CAMPBELL EDWARDS & CONROY, P.C.
1205 Westlakes Drive, Ste. 330
Berwyn, PA 19312
*Attorneys for Defendant*

        */s/ Craig M. Schumacher*
        CRAIG M. SCHUMACHER