**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

STATE FARM FIRE AND CASUALTY as
subrogee of MICHAEL AND HOLLY
CROCKETT,

       Plaintiff,

v.

OMEGA FLEX, INC.,

       Defendant.

_____/

CIVIL ACTION NO. 4:16-CV-387-JLH

### DEFENDANT OMEGA FLEX, INC.'S RESPONSE TO PLAINTIFF'S COUNTER-STATEMENT OF CONTESTED MATERIAL FACTS

COMES NOW Defendant, Omega Flex, Inc. ("Omega Flex") and, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 of the United States District Court for the Eastern District of Arkansas, submits the following response to Plaintiff's Counter-Statement of Contested Material Facts ("Counter-Statement") (Doc. No. 77).

### Introduction

As a threshold matter, Plaintiff's Counter-Statement violates Local Rule 56.1(b), as well as Rule 56(e) of the Federal Rules of Civil Procedure, which prohibit the inclusion of legal arguments in the fact specific portions of the papers required to support or oppose a Motion for Summary Judgment.  Local Rule 56.1(b) requires the party opposing a motion for summary judgment to "file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried."  However, most if not all of Plaintiff's "facts" are expert opinions and arguments presented under the guise of facts.

Moreover, none of the "facts" presented in Plaintiff's Counter-Statement are material to the issues raised in Omega Flex's Motion for Partial Summary Judgment on Plaintiff's failure to

1

warn claims and therefore, do not preclude the entry of summary judgment in Omega Flex's favor on these claims.    Plaintiff has failed to set forth genuine material facts in its Counter-Statement.   "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added); *see also Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts.").   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Ibid.*

## Plaintiff's Contested Facts

1.     Admitted.   (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶ 25).

2.     Admitted that Plaintiff's disclosed experts, Don Davis, Charles Keller Colwell, Johnie P. Spruiell, and Mark Hergenrether, opine that energy from an indirect lightning strike entered the Crockett home on May 9, 2015.  It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's cited experts offer admissible opinions sufficient for that theory to reach a jury.  (*See* Doc. No. 61, Omega Flex's Motion to Exclude Certain Opinions and Testimony of the Integrity Experts, at 13-16; *see also* Doc. No. 51-6, Kytomaa Report, at 28 (opining that lightning may have attached directly to the Crockett residence)).  It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

3.      Admitted that Plaintiff's disclosed expert, Don Davis, has offered the opinion that "the proximate cause of the fire is consistent with an indirect lightning strike which created a breach in the incoming CSST supply line in the crawlspace below the floor of the northwest sector library/office area." (Doc. No. 68-4, Davis Report, at SF004774).  It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (*See* Doc. No. 61, Omega Flex's Motion to Exclude Certain Opinions and Testimony of the Integrity Experts, at 16-24; Doc. No. 59, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 9-20).  Hole 1A <u>could not</u> have been caused by lightning-induced arcing because the charge necessary to form hole 1A is greater than the total charge available in the nearby lightning strikes.  (*See* Doc. No. 51-6, Kytomaa Report, at 28-29).  It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

4.      Admitted that Plaintiff's expert, Dr. Elizabeth Buc, opines that the area of origin was "to the right of the study fireplace below the floorboards or the crawl space." (Doc. No. 68-3, Dep. of E. Buc, at 25:9-25).  It is specifically denied that this theory is correct and that the theory is a "fact."  The area of origin was the west wing of the Crockett home.  (*See* Doc. No. 51-6, Kytomaa Report, at 15).  It is also denied that Mr. Crockett first witnessed smoke and/or fire to the right of the study fireplace in the crawlspace.  (Doc. No. 68-8, Dep. of M. Crockett, at 107:7-25 (testifying that he first saw smoke above the study fireplace, near the ceiling); *id.* at 112:6-25 (same)).  It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

5.      Admitted that Plaintiff's expert, Don Davis, offers the opinion that "[t]he ignition source for this fire is electrical arcing/heat energy in between the CSST supply line and metal

HVAC duct work, which was caused by an indirect lighting strike near the residence." (Doc. No. 68-4, Davis Report, at SF004774). It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury. (*See* Doc. No. 61, Omega Flex's Motion to Exclude Certain Opinions and Testimony of the Integrity Experts, at 16-24; Doc. No. 73, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of the Integrity Experts, at 5-8; Doc. No. 59, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 9-20). Hole 1A <u>could not</u> have been caused by lightning-induced arcing because the charge necessary to form hole 1A is greater than the total charge available in the nearby lightning strokes. (*See* Doc. No. 51-6, Kytomaa Report, at 28-29). It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

6.     Admitted. (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶ 30).

7.     Admitted that hole 1A is consistent with a thermal event. (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶ 30). Admitted that Plaintiff's disclosed expert, Dr. Buc, opines that hole 1A must have been caused by lightning-induced arcing. It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury. (*See* Doc. No. 59, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 9-20; Doc. No. 72, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 6-11). Hole 1A did not form until after the fire started, once the spread of the fire removed the insulation from nearby energized copper wiring, as evidenced by the significant deposits of copper found post-fire around hole 1A. (*See* Doc. No.

51-6, Kytomaa Report, at 29).  It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

8.      Denied.  Photographs of the Crockett residence post-fire clearly show copper branch circuit wiring in the vicinity of Plaintiff's identified area of fire origin, *i.e.* hole 1A.  (*See* Doc. No. 68-4, Davis Report, at SF004767-SF004768; Doc No. 67-6, Dep. of H. Kytomaa, at 131:4-132:14).  It is specifically denied that Plaintiff's theory as to the area of origin is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (Doc. No. 72, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 6-11; Doc. No. 73, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions of the Integrity Experts, at 2-5).  The area of origin is the west wing of the Crockett residence.  (*See* Doc. No. 51-6, Kytomaa Report, at 15).  It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

9.      Denied.  Plaintiff's retained expert, Dr. Buc, testified that it was physically impossible for "conductors in the area of the fireplace … above the floor in the wall spaces on the north and west side of the study" – not residential conductors generally – to "drop down to the CSST" and cause hole 1A.  (Doc. No. 68-3, Dep. of E. Buc, at 67:12-69:2, 168:16-169:9).  It is specifically denied that Plaintiff's theory that any electrical conductors in the area of origin would have become de-energized before making contact with the CSST is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (Doc. No. 72, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 6-11; Doc. No. 73, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of the Integrity Experts, at 2-5).  Hole 1A did not form

until after the fire started, once the spread of the fire removed the insulation from nearby energized copper wiring, as evidenced by the significant deposits of copper found post-fire around hole 1A.  (*See* Doc. No. 51-6, Kytomaa Report, at 29).  It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

10.     Admitted that there is chemical evidence of zinc in the area of hole 1A post-fire. (Doc. No. 51-6, Kytomaa Report, at 20).  Further admitted that Plaintiff's retained expert, Dr. Buc, testified that the presence of zinc is consistent with arcing between the CSST and a HVAC duct.  (Doc. No. 68-3, Dep. of E. Buc, at 58:10-15).  It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (Doc. No. 67-6, Dep. of H. Kytomaa, at 77:2-6 (testifying that the presence of zinc around hole 1A is also consistent with the melting of zinc during the course of the fire, given that zinc has a low melting point); *id.* at 83:3-84:23 (same); *id.* at 86:5-17 (noting that zinc and aluminum are common materials in home construction)).  It is also denied that the HVAC duct in the study of the Crockett home was in close proximity to hole 1A.  (*See* Doc. No. 60-2, Dep. of C. Colwell, at 56:16-57:1 (testifying that he could not determine the location of the HVAC duct given the level of fire/structural damage to the Crockett home); Doc. No. 73, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of the Integrity Experts, 3-4).  It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

11.     Admitted that there is chemical evidence of aluminum in the area of hole 1A post-fire.  (Doc. No. 51-6, Kytomaa Report, at 20).  Further admitted that Plaintiff's retained expert, Dr. Buc, testified that the aluminum around hole 1A could have come from foil insulation

covering a HVAC duct.   (Doc. No. 68-3, Dep. of E. Buc, at 70:25-71:10).   It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.   (Doc. No. 67-6, Dep. of H. Kytomaa, at 77:2-6 (testifying that the presence of aluminum around hole 1A is also consistent with the melting of aluminum during the course of the fire, given that aluminum has a low melting point); *id.* at 86:5-17 (noting that zinc and aluminum are common materials in home construction)).   It is also denied that the HVAC duct in the study of the Crockett home was in close proximity to hole 1A.   (*See* Doc. No. 60-2, Dep. of C. Colwell, at 56:16-57:1 (testifying that he could not determine the location of the HVAC duct given the level of fire/structural damage to the Crockett home); Doc. No. 73, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of the Integrity Experts, 3-4).   It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

12.     Admitted that there was chemical evidence of copper in the area of hole 1A post-fire.   (Doc. No. 51-6, Kytomaa Report, at 20, 29; Doc. No. 68-3, Dep. of E. Buc, at 64:6-23 (testifying that in locations around hole 1A, she located copper "on the order of like 4 to 6 percent … by weight")).   Further admitted that Plaintiff's retained expert, Dr. Buc, testified that the copper found around hole 1A is consistent with the melt and chemistry of the TracPipe® CSST retained from the Crockett home.   It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's expert offers admissible opinions sufficient for that theory to reach a jury.   (Doc. No. 59, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 13-17; Doc. No. 72, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 3-6; *see also* Doc. No. 58-6, EDS

Results (showing no measurable amounts of copper in base samples 1 and 2 for the TracPipe®

CSST retained from the Crockett residence); Doc. No. 67-6, Dep. of H. Kytomaa, at 77:7-24,

197:20-25, 200:24-201:10 (explaining EDS testing confirmed that the virgin CSST retained from

the Crockett home – meaning those portions of the CSST that did not show arc-damage – did not

contain any measurable amounts of copper); *id*. 71:8-13, 199:23-200:13 (explaining the process

followed in conducting elemental analysis)).  It is further denied that this opinion creates any

issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn

claims.

13.     Admitted that through its Opposition to Omega Flex's Motion for Partial

Summary Judgment (Doc. No. 67), Plaintiff's retained expert, Dr. Buc, proffered new opinions

regarding the purported presence of copper in the base metal of the TracPipe® CSST retained

from the Crockett residence.  (Doc. No. 67-8, New EDS Results for Base Sample 1).  It is

specifically denied that this newly proffered opinion or evidence was properly disclosed, that the

theory is correct, that the theory is a "fact," and that Plaintiff's expert offers admissible opinions

sufficient for that theory to reach a jury.  (*See* Doc. No. 59, Omega Flex's Motion to Exclude

Certain Opinions and Testimony of Dr. Buc, at 13-17; Doc. No. 72, Reply in Support of Omega

Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 3-6; *see also* Doc. No.

58-6, EDS Results (showing no measurable amounts of copper in base samples 1 and 2 for the

TracPipe® CSST retained from the Crockett residence); Doc. No. 67-6, Dep. of H. Kytomaa, at

77:7-24, 197:20-25, 200:24-201:10 (explaining EDS testing confirmed that the virgin CSST

retained from the Crockett home – meaning those portions of the CSST that did not show arc-

damage – did not contain any measurable amounts of copper); *id*. 71:8-13, 199:23-200:13

(explaining the process followed in conducting elemental analysis)).  It is further denied that this

opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

14.     Denied that copper generally is present in low concentrations in TracPipe® CSST; further denied that it is present in low concentrations in the TracPipe® CSST retained from the Crockett residence.  (*See* Doc. No. 58-6, EDS Results (showing no measurable amounts of copper in base samples 1 and 2 for the TracPipe® CSST retained from the Crockett residence); Doc. No. 67-6, Dep. of H. Kytomaa, at 77:7-24, 197:20-25, 200:24-201:10 (explaining EDS testing confirmed that the virgin CSST retained from the Crockett home – meaning those portions of the CSST that did not show arc-damage – did not contain any measurable amounts of copper); *id.* 71:8-13, 199:23-200:13 (explaining the process followed in conducting elemental analysis).  *See also* Doc. No. 81-2, Dep. of S. Treichel, at 52:5-53:13 (testifying that copper is not listed in the ASTM A240 specification for the stainless steel that Omega Flex uses in its TracPipe® CSST and that he would not expect to find copper in the stainless steel)).  Admitted that Plaintiff's retained expert, Dr. Buc, testified that the copper found post-fire around hole 1A is consistent with the melt and chemistry of the TracPipe® CSST retained from the Crockett home.  It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (Doc. No. 59, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 13-17; Doc. No. 72, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 3-6).  It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

15.     Admitted that Dr. Kytomaa performed ICP testing on an *exemplar piece* of TracPipe® CSST, which showed copper in concentrations of .43% by weight for the *exemplar piece* of TracPipe® CSST.  It is denied that this ICP testing was performed on any TracPipe® CSST retained from the Crockett home.  (Doc. No. 67-6, Dep. of H. Kytomaa, at 63:24-65:9, 201:5-23).  It is specifically denied that the presence or absence of copper in an exemplar piece of TracPipe® CSST creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

16.     Admitted that an arcing event between CSST and another metallic object *can* result in the transfer of material; denied that it always results in the transfer of material.  (Doc. No. 67-6, Dep. of H. Kytomaa, at 83:3-7).  Admitted that the concentrations of copper found around hole 1A post-fire far exceeded the copper found in the base metal of the TracPipe® CSST retained from the Crockett home.  (*See* Doc. No. 58-6, EDS Results (showing no measurable amounts of copper in base samples 1 and 2 for the TracPipe® CSST retained from the Crockett residence); Doc. No. 67-6, Dep. of H. Kytomaa, at 77:7-24, 197:20-25, 200:24-201:10 (explaining EDS testing confirmed that the virgin CSST retained from the Crockett home – meaning those portions of the CSST that did not show arc-damage – did not contain any measurable amounts of copper); *id*. 71:8-13, 199:23-200:13 (explaining the process followed in conducting elemental analysis).  *See also* Doc. No. 81-2, Dep. of S. Treichel, at 52:5-53:13 (testifying that copper is not listed in the ASTM A240 specification for the stainless steel that Omega Flex uses in its TracPipe® CSST and that he would not expect to find copper in the stainless steel)).  Denied that the opinion contained in Paragraph 16 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

17.     Admitted that Plaintiff's retained expert, Dr. Buc, offers the opinion that the stainless steel melt around hole 1A, in and of itself, or the jacket that smoldered, burned, or glowed in the area of that same melt served as competent ignition sources for the escaping gas. It is specifically denied that this theory of ignition is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (Doc. No. 59, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 18-20).  It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

18.     Admitted that Plaintiff's retained expert, Dr. Buc, offers the opinion that the temperature of the melt around the hole was greater than the ignition temperature of gas for at least 3 seconds.  It is specifically denied that this theory of ignition is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (Doc. No. 59, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 18-20).  It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

19.     Admitted that Plaintiff's disclosed experts opine that the "[t]he fire in the Crockett home was caused when this arc hole (1A) in the gas piping was created.  Natural gas within the TracPipe® CSST piping escaped and was ignited during the arc event.  This resulted in a fuel-gas fed fire." (Doc. No. 68-15, Integrity Report, at 2).  It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (*See* Doc. No. 61, Omega Flex's Motion to Exclude Certain Opinions and Testimony of the Integrity Experts, at 16-24; Doc. No. 59, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Dr. Buc, at 18-20; *see also* Doc. No. 51-6,

Kytomaa Report, at 29-31 (ruling out the hypothesis that the natural gas from the TracPipe® CSST was the first fuel ignited)).   It is further denied that this opinion creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

**Warnings**

20.     Admitted.   (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶ 8).

21.     Admitted that Mr. and Mrs. Crockett, subsequent purchasers of the home, testified that they did not recall receiving any warnings or communications from Omega Flex.   (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶¶ 7-8). It is specifically denied that the statement contained in Paragraph 21 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims as Arkansas does not recognize a post-sale duty to warn.   *See Hughes v. Benley Indus., LLC*, No. 11-6025, 2013 U.S. Dist. LEXIS 137494, at *5 (W.D. Ark. Sept. 25, 2013) ("Arkansas does not recognize a post-sale failure to warn claim."); *Boatman's Trust Co. v. St. Paul Fire & Marine Ins. Co.*, 995 F. Supp. 956, 962 (E.D. Ark. 1998) (granting summary judgment in the defendant's favor as to the plaintiff's postsale duty to warn claim because there is "no cause of action under Arkansas law involving any post-sale duty to warn").

22.     Admitted only that homeowners *generally* do not receive a copy of Omega Flex's D&I Guide; denied that they *cannot* receive a copy.   (*See* Doc. 51-10, Omega Flex's Answer to State Farm's Request for Admission No. 1 (noting that Omega Flex's D&I was publically available on the Omega Flex website)).   It is further denied that the statement contained in Paragraph 22 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.   Omega Flex's D&I Guide is provided to gas installers

through Omega Flex's training program and to purchasers at the time of sale.  (Doc. No. 51-9, S. Treichel *Nationwide* Trial Tr., at 858:18-859:4 ("every installer gets a design guide when he's completed his training"); *id.* at 859:5-859:10 ("if an installer wants an updated design guide or has lost the one he has … he can obtain them free of charge from the point of purchase).

23.     Admitted that Omega Flex does not print any warnings directly on the yellow jacketing of its product regarding the potential hazards of lightning or the failure to directly bond the product.  (Doc. No. 68-10, Dep. of R. Torbin, at 152:6-154:14).  Denied that it is practical to print legibly a warning on the yellow jacketing given the dimensions of the tubing and because Omega Flex is required by the applicable manufacturing standard to repeat set markings every two feet.  (*Ibid.*).  It is further denied that the statement contained in Paragraph 23 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims; none of Plaintiff's experts have suggested either that it is practical to print warnings on the yellow jacketing of TracPipe® CSST or that the Crocketts would have received warnings transmitted in such a manner where the Crocketts were subsequent purchasers of the home and the CSST was already installed in the home's interstitial spaces.  (*See* Doc. No. 68-3, Dep. of E. Buc, at 33:20-34:2 (testifying that the TracPipe® CSST at the Crockett home was located within "concealed spaces")).

24.     Omega Flex objects to this statement of fact as Plaintiff fails to support with appropriate evidentiary foundation its contention that the December 2005 D&I Guide was applicable to the subject installation.  It is denied that the December 2005 D&I Guide was applicable to the subject installation.  (*See* Doc. 51-6, Kytomaa Report, at 13 (noting that the January 2005 D&I Guide was applicable to the subject installation)).  Thus, any instructions contained in the December 2005 D&I Guide fails to create an issue of material fact sufficient for

Plaintiff to survive summary judgment on its failure to warn claims.  It is specifically denied that the pages 82 and 83 of Robert Torbin's deposition confirm that there are no warnings with regard to the fact that CSST can be bonded and grounded and still have arc damage due to lightning and proximity to other metallic systems.  (Doc. No. 68-10, Dep. of R. Torbin, at 83:11-85:6 (testifying that he believes the December 2005 version of the D&I Guide calls for "equipotential bonding" of all metallic systems in the home)).

**Omega Flex's Knowledge of the Dangers of CSST**

25.    Denied.   By November 27, 2000 "all available evidence indicate[d]" that electrical arcing caused by a nearby lightning strike had the potential to perforate *improperly installed* TracPipe® CSST.   (Doc No. 68-6, Omega Flex Engineering Report, at OF-CROCKETT007931, OF-CROCKETT007933).  It is further denied that the statement contained in Paragraph 25 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims since properly installing a TracPipe® CSST system – *i.e.* with a direct bond – is effective at preventing perforation in cases of an indirect lightning strike. (Doc No. 67-6, Dep. of H. Kytomaa, 33:25-34:7; Doc. No. 51-6, Kytomaa Report, at 15; Doc. No. 44-24, Kytomaa Report, Appendix E – CSST Background; Doc. No. 44-25, Gas Technology Institute, "Validation of Installation Methods for CSST Gas Piping to Mitigate Indirect Lightning Related Damage – Revision A," September 5, 2013, at 4-5; *id.* at 28 (Directly bonding a CSST system "to earth ground clearly limits the amount of charge available on the CSST during nearby lightning strikes versus the unbonded condition.  Limiting the charge available was shown to prevent perforation of the CSST in all simulated and observed cases that made use of a ground bond.")).   Furthermore, assuming that an indirect lightning strike impacted the Crockett residence, directly bonding the product would have prevented the formation of hole 1A in the

TracPipe® CSST and the harm Plaintiff alleges. (Doc. No. 44-26, Kytomaa Supp. Report, at 1-2).

26.     Denied. (*See* Doc. No. 51-10, Omega Flex's Answer to Request for Admission No. 5). It is further denied that the statement contained in Paragraph 26 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims; assuming that an indirect lightning strike impacted the Crockett residence, directly bonding the product would have prevented the formation of hole 1A in the TracPipe® CSST and the harm Plaintiff alleges. (Doc. No. 44-26, Kytomaa Supp. Report, at 1-2).

27.     Admitted that directly bonding TracPipe® CSST to the home's grounding electrode does not prevent all lightning-related residential fires. No product can prevent all lightning-related residential fires, including a lightning protection system installed in accordance with NFPA 780 and/or UL 96. (*See* Doc. No. 51-10, Omega Flex's Answer to Request for Admission No. 19; *see also* Doc. No. 51-6, Kytomaa Report, at 15). It is denied that directly bonding TracPipe® CSST to the home's grounding electrode is not an effective means of mitigating the risks of an indirect lightning strike. (*See* Doc. No. 68-3, Dep. of E. Buc, at 131:14-24 (testifying that she is aware of a correlation between directly bonding the product and preventing perforation from lightning-induced arcing); Doc. No. 68-14, Dep. of J. Spruiell, at 66:14-19 (testifying that "[i]n an indirect lightning strike, directly bonding the CSST can mitigate the effects of lightning"); *id.* at 64:20-65:7 (same); Doc. No. 60-3, Dep. of M. Hergenrether, at 104:7-105:1 (testifying that directly bonding the CSST system can mitigate the effects of an indirect lightning strike)). It is further denied that the statement contained in Paragraph 27 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims since properly installing the TracPipe® CSST system –

*i.e.* with a direct bond – is effective at preventing perforation in cases of an indirect lightning strike. (Doc No. 67-6, Dep. of H. Kytomaa, 33:25-34:7; Doc. No. 51-6, Kytomaa Report, at 15; Doc. No. 44-24, Kytomaa Report, Appendix E – CSST Background; Doc. No. 44-25, Gas Technology Institute, "Validation of Installation Methods for CSST Gas Piping to Mitigate Indirect Lightning Related Damage – Revision A," September 5, 2013, at 4-5; *id.* at 28 (Directly bonding a CSST system "to earth ground clearly limits the amount of charge available on the CSST during nearby lightning strikes versus the unbonded condition. Limiting the charge available was shown to prevent perforation of the CSST in all simulated and observed cases that made use of a ground bond.")). Furthermore, assuming that an indirect lightning strike impacted the Crockett residence, directly bonding the product would have prevented the formation of hole 1A in the TracPipe® CSST and the harm Plaintiff alleges. (Doc. No. 44-26, Kytomaa Supp. Report, at 1-2).

28.    Admitted that directly bonding TracPipe® CSST to the home's grounding electrode does not prevent all lightning-related residential fires. No product can prevent all lightning-related residential fires, including a lightning protection system installed in accordance with NFPA 780 and/or UL 96. (*See* Doc. No. 51-10, Omega Flex's Answer to Request for Admission No. 19; *see also* Doc. No. 51-6, Kytomaa Report, at 15). It is denied that directly bonding TracPipe® CSST to the home's grounding electrode is not an effective means of mitigating the risks of an indirect lightning strike. (*See* Doc. No. 68-3, Dep. of E. Buc, at 131:14-24 (testifying that she is aware of a correlation between directly bonding the product and preventing perforation from lightning-induced arcing); Doc. No. 68-14, Dep. of J. Spruiell, at 66:14-19 (testifying that "[i]n an indirect lightning strike, directly bonding the CSST can mitigate the effects of lightning"); *id.* at 64:20-65:7 (same); Doc. No. 60-3, Dep. of M.

Hergenrether, at 104:7-105:1 (testifying that directly bonding the CSST system can mitigate the effects of an indirect lightning strike)).   It is further denied that the statement contained in Paragraph 28 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims since properly installing the TracPipe® CSST system – *i.e.* with a direct bond – is effective at preventing perforation in cases of an indirect lightning strike.  (Doc No. 67-6, Dep. of H. Kytomaa, 33:25-34:7; Doc. No. 51-6, Kytomaa Report, at 15; Doc. No. 44-24, Kytomaa Report, Appendix E – CSST Background; Doc. No. 44-25, Gas Technology Institute, "Validation of Installation Methods for CSST Gas Piping to Mitigate Indirect Lightning Related Damage – Revision A," September 5, 2013, at 4-5; *id.* at 28 (Directly bonding a CSST system "to earth ground clearly limits the amount of charge available on the CSST during nearby lightning strikes versus the unbonded condition.  Limiting the charge available was shown to prevent perforation of the CSST in all simulated and observed cases that made use of a ground bond.")).  Furthermore, assuming that an indirect lightning strike impacted the Crockett residence, directly bonding the product would have prevented the formation of hole 1A in the TracPipe® CSST and the harm Plaintiff alleges.  (Doc. No. 44-26, Kytomaa Supp. Report, at 1-2).

**Bonding and Grounding**

29.    Admitted that prior to 2007, Omega Flex had not internally performed testing to validate the efficacy of directly bonding CSST.  Denied that Omega Flex had not validated the efficacy of directly bonding the product through other means; as Mr. Torbin testified:

> [T]here's a large body of work involved with lightning and mitigating lightning damage that is based, in part, on engineering analysis, and testing that Omega Flex would rely upon.
> There's a longstanding standard of care in protecting metal systems from lightning.

> There's a longstanding artwork or art – science of engineering in the art of protecting against lightning protecting that Omega Flex would have relied upon.
>
> And so, again, looking at the world, an looking at the common practices used to protect metal systems from lightning, the approach taken by Omega Flex is very consistent with the state-of-the-art and the state of knowledge in lightning protection, and they relied on that historical record as their substantiation for recommending use of a number six bonding conductor.

(Doc. No. 68-10, Dep. of R. Torbin, at 171:8-171:19).  It is further denied that the statement contained in Paragraph 29 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims; assuming that an indirect lightning strike impacted the Crockett residence, directly bonding the product would have prevented the formation of hole 1A in the TracPipe® CSST and the harm Plaintiff alleges.  (Doc. No. 44-26, Kytomaa Supp. Report, at 1-2).

30.     Omega Flex objects to this statement of fact as Plaintiff fails to support with appropriate evidentiary foundation its contention that the National Electric Code required bonding solely for the purpose of protecting against electrical shock in the event of a short circuit.  Omega Flex admits only that Plaintiff's expert, Mark Goodson, testified that this was his understanding of the National Electric Code's bonding requirement.  It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (Doc No. 57, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Mr. Goodson, at 11-16; Doc No. 71, Reply in Support of Motion to Exclude Certain Opinions and Testimony of Mr. Goodson, at 2-3).  It is further denied that the statement contained in Paragraph 30 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.  Whether the subject installation satisfied the requirements of the National Electric Code – and the purported

18

reasoning behind specific code provisions – is irrelevant to Plaintiff's claim that *Omega Flex* failed to provide adequate warnings and instructions.  It is undisputed that the subject installation did not comply with the requirement contained in Omega Flex's January 2005 D&I Guide – and every D&I Guide since October 1999 – that the CSST system must be directly bonded to the home's grounding electrode.  (Doc. No. 51-10, Omega Flex's Answer to Request for Admission No. 21 (Request: "Admit that in 2009 you began communicating to the public the importance of bonding and grounding yellow-jacketed CSST."  Answer: "Denied as stated.  Omega Flex has required that TracPipe® CSST be bonded to the building's electrical ground since 1999."); Doc. No. 51-3, Jan. 2005 D&I Guide, at OF-CROCKETT000493; Doc. No. 51-6, Kytomaa Report, at 11-14; Doc. No. 60-2, Dep. of C. Colwell, at 83:4-9, 87:21-23; Doc. No. 68-14, Dep. of J. Spruiell, at 61:24-62:20).

31.     Denied.  The 1999 version of the National Electric Code adopted the National Fuel Gas Code's requirement that the CSST system must be directly bonded to the home's grounding electrode using a dedicated bonding clamp and bond wire.  (Doc. No. 68-7, Dep. of M. Albino, at 15:23-18:11).  It is further denied that this statement creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.  Whether the subject installation satisfied the requirements of the National Electric Code is irrelevant to Plaintiff's claim that *Omega Flex* failed to provide adequate warnings and instructions.  It is undisputed that the subject installation did not comply with the requirement contained in Omega Flex's January 2005 D&I Guide – and every D&I Guide since October 1999 – that the CSST system must be directly bonded to the home's grounding electrode.  (Doc. No. 51-10, Omega Flex's Answer to Request for Admission No. 21 (Request: "Admit that in 2009 you began communicating to the public the importance of bonding and grounding yellow-jacketed CSST."

Answer: "Denied as stated.  Omega Flex has required that TracPipe® CSST be bonded to the building's electrical ground since 1999."); Doc. No. 51-3, Jan. 2005 D&I Guide, at OF-CROCKETT000493; Doc. No. 51-6, Kytomaa Report, at 11-14; Doc. No. 60-2, Dep. of C. Colwell, at 83:4-9, 87:21-23; Doc. No. 68-14, Dep. of J. Spruiell, at 61:24-62:20).

32.     Omega Flex objects to this statement of fact as Plaintiff fails to support with appropriate evidentiary foundation its contention that the National Electric Code permitted bonding through an appliance's equipment grounding conductor.  Omega Flex admits only that Plaintiff's expert, Mark Goodson, testified that this was his understanding of the National Electric Code's bonding requirement.  It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (Doc No. 57, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Mr. Goodson, at 11-16; Doc No. 71, Reply in Support of Motion to Exclude Certain Opinions and Testimony of Mr. Goodson, at 2-3).  It is denied that the statement contained in Paragraph 32 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.  Whether the subject installation satisfied the requirements of the National Electric Code is irrelevant to Plaintiff's claim that *Omega Flex* failed to provide adequate warnings and instructions.  It is undisputed that the subject installation did not comply with the requirement contained in Omega Flex's January 2005 D&I Guide – and every D&I Guide since October 1999 – that the CSST system must be directly bonded to the home's grounding electrode.  (Doc. No. 51-10, Omega Flex's Answer to Request for Admission No. 21 (Request: "Admit that in 2009 you began communicating to the public the importance of bonding and grounding yellow-jacketed CSST."  Answer: "Denied as stated.  Omega Flex has required that TracPipe® CSST be bonded to the building's electrical ground since 1999."); Doc. No. 51-3,

Jan. 2005 D&I Guide, at OF-CROCKETT000493; Doc. No. 51-6, Kytomaa Report, at 11-14;
Doc. No. 60-2, Dep. of C. Colwell, at 83:4-9, 87:21-23; Doc. No. 68-14, Dep. of J. Spruiell, at
61:24-62:20).

33.     Omega Flex objects to this statement of fact as Plaintiff fails to support with
appropriate evidentiary foundation its contention that the National Electric Code permitted
bonding through an appliance's equipment grounding conductor.   Omega Flex admits only that
Plaintiff's expert, Mark Goodson, testified that this was his understanding of the National
Electric Code's bonding requirement.   It is specifically denied that this theory is correct, that the
theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory
to reach a jury.   (Doc No. 57, Omega Flex's Motion to Exclude Certain Opinions and Testimony
of Mr. Goodson, at 11-16; Doc No. 71, Reply in Support of Motion to Exclude Certain Opinions
and Testimony of Mr. Goodson, at 2-3).   It is denied that the statement contained in Paragraph 33
creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its
failure to warn claims.   Whether the subject installation satisfied the requirements of the National
Electric Code is irrelevant to Plaintiff's claim that *Omega Flex* failed to provide adequate
warnings and instructions.   It is undisputed that the subject installation did not comply with the
requirement contained in Omega Flex's January 2005 D&I Guide – and every D&I Guide since
October 1999 – that the CSST system must be directly bonded to the home's grounding
electrode.   (Doc. No. 51-10, Omega Flex's Answer to Request for Admission No. 21 (Request:
"Admit that in 2009 you began communicating to the public the importance of bonding and
grounding yellow-jacketed CSST."   Answer: "Denied as stated.   Omega Flex has required that
TracPipe® CSST be bonded to the building's electrical ground since 1999."); Doc. No. 51-3,
Jan. 2005 D&I Guide, at OF-CROCKETT000493; Doc. No. 51-6, Kytomaa Report, at 11-14;

Doc. No. 60-2, Dep. of C. Colwell, at 83:4-9, 87:21-23; Doc. No. 68-14, Dep. of J. Spruiell, at 61:24-62:20).

34.     Denied.  The Arkansas State Fire Prevention Code, the National Fuel Gas Code, and the International Fuel Gas Codes applicable at the time of the subject installation required the gas piping installer of a CSST system to comply with the manufacturer's instructions.  (Doc. 51-3, Jan. 2005 D&I Guide, at OF-CROCKETT000493; Doc. 51-6, Kytomaa Report, at 11-14). It is denied that the statement contained in Paragraph 34 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.  Whether the subject installation satisfied the requirements of various state and national codes is irrelevant to Plaintiff's claim that *Omega Flex* failed to provide adequate warnings and instructions.  It is undisputed that the subject installation did not comply with the requirement contained in Omega Flex's January 2005 D&I Guide – and every D&I Guide since October 1999 – that the CSST system must be directly bonded to the home's grounding electrode.  (Doc. No. 51-10, Omega Flex's Answer to Request for Admission No. 21 (Request: "Admit that in 2009 you began communicating to the public the importance of bonding and grounding yellow-jacketed CSST." Answer: "Denied as stated.  Omega Flex has required that TracPipe® CSST be bonded to the building's electrical ground since 1999."); Doc. No. 51-3, Jan. 2005 D&I Guide, at OF-CROCKETT000493; Doc. No. 51-6, Kytomaa Report, at 11-14; Doc. No. 60-2, Dep. of C. Colwell, at 83:4-9, 87:21-23; Doc. No. 68-14, Dep. of J. Spruiell, at 61:24-62:20).

35.     Admitted that directly bonding TracPipe® CSST to the home's grounding electrode does not prevent all lightning-related residential fires.  No product can prevent all lightning-related residential fires, including a lightning protection system installed in accordance with NFPA 780 and/or UL 96.  (*See* Doc. No. 51-10, Omega Flex's Answer to Request for

Admission No. 19; *see also* Doc. No. 51-6, Kytomaa Report, at 15).  It is denied that directly bonding TracPipe® CSST to the home's grounding electrode is not an effective means of mitigating the risks of an indirect lightning strike.  (*See* Doc. No. 68-3, Dep. of E. Buc, at 131:14-24 (testifying that she is aware of a correlation between directly bonding the product and preventing perforation from lightning-induced arcing); Doc. No. 68-14, Dep. of J. Spruiell, at 66:14-19 (testifying that "[i]n an indirect lightning strike, directly bonding the CSST can mitigate the effects of lightning"); *id.* at 64:20-65:7 (same); Doc. No. 60-3, Dep. of M. Hergenrether, at 104:7-105:1 (testifying that directly bonding the CSST system can mitigate the effects of an indirect lightning strike)).  It is further denied that the statement contained in Paragraph 35 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims since properly installing the TracPipe® CSST system – *i.e.* with a direct bond – is effective at preventing perforation in cases of an indirect lightning strike.  (Doc No. 67-6, Dep. of H. Kytomaa, 33:25-34:7; Doc. No. 51-6, Kytomaa Report, at 15; Doc. No. 44-24, Kytomaa Report, Appendix E – CSST Background; Doc. No. 44-25, Gas Technology Institute, "Validation of Installation Methods for CSST Gas Piping to Mitigate Indirect Lightning Related Damage – Revision A," September 5, 2013, at 4-5; *id.* at 28 (Directly bonding a CSST system "to earth ground clearly limits the amount of charge available on the CSST during nearby lightning strikes versus the unbonded condition.  Limiting the charge available was shown to prevent perforation of the CSST in all simulated and observed cases that made use of a ground bond.")).  Furthermore, assuming that an indirect lightning strike impacted the Crockett residence, directly bonding the product would have prevented the formation of hole 1A in the TracPipe® CSST and the harm Plaintiff alleges.  (Doc. No. 44-26, Kytomaa Supp. Report, at 1-2).

**Design and Installation Guide**

36.    Omega Flex objects to this statement of fact as Plaintiff fails to support with appropriate evidentiary foundation its contention regarding the bonding requirements of the National Electric Code.  Omega Flex admits only that Plaintiff's expert, Mark Goodson, testified that this was his understanding of the National Electric Code's bonding requirement.  It is specifically denied that this theory is correct, that the theory is a "fact," and that Plaintiff's experts offer admissible opinions sufficient for that theory to reach a jury.  (Doc No. 57, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Mr. Goodson, at 11-16; Doc. No. 71, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of Mr. Goodson, at 2-3).  It is denied that the statement contained in Paragraph 36 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims. Whether the subject installation satisfied the requirements of the National Electric Code is irrelevant to Plaintiff's claim that *Omega Flex* failed to provide adequate warnings and instructions.  It is undisputed that the subject installation did not comply with the requirement contained in Omega Flex's January 2005 D&I Guide – and every D&I Guide since October 1999 – that the CSST system must be directly bonded to the home's grounding electrode.  (Doc. No. 51-10, Omega Flex's Answer to Request for Admission No. 21 (Request: "Admit that in 2009 you began communicating to the public the importance of bonding and grounding yellow-jacketed CSST."  Answer: "Denied as stated.  Omega Flex has required that TracPipe® CSST be bonded to the building's electrical ground since 1999."); Doc. No. 51-3, Jan. 2005 D&I Guide, at OF-CROCKETT000493; Doc. No. 51-6, Kytomaa Report, at 11-14; Doc. No. 60-2, Dep. of C. Colwell, at 83:4-9, 87:21-23; Doc. No. 68-14, Dep. of J. Spruiell, at 61:24-62:20).

37.    Admitted that Plaintiff's disclosed expert, Mark Goodson, testified that he personally finds the instructions contained within Omega Flex's D&I Guide "confusing". (Doc. No. 68-11, Goodson Report, at ¶ 13 (noting that his opinion as to the D&I Guide is based on "[t]his writer's own understanding…")). It is specifically that Mr. Goodson's personal opinion is correct, that the opinion is a "fact," and that Plaintiff's experts offer admissible evidence sufficient for that opinion to reach a jury. (Doc No. 57, Omega Flex's Motion to Exclude Certain Opinions and Testimony of Mr. Goodson, at 11-16; Doc. No. 71, Reply in Support of Omega Flex's Motion to Exclude Certain Opinions and Testimony of Mr. Goodson, at 2-3). It is undisputed that the subject installation did not comply with the requirement contained in Omega Flex's January 2005 D&I Guide – and every D&I Guide since October 1999 – that the CSST system must be directly bonded to the home's grounding electrode. (Doc. No. 51-10, Omega Flex's Answer to Request for Admission No. 21 (Request: "Admit that in 2009 you began communicating to the public the importance of bonding and grounding yellow-jacketed CSST." Answer: "Denied as stated. Omega Flex has required that TracPipe® CSST be bonded to the building's electrical ground since 1999."); Doc. No. 51-3, Jan. 2005 D&I Guide, at OF-CROCKETT000493; Doc. No. 51-6, Kytomaa Report, at 11-14; Doc. No. 60-2, Dep. of C. Colwell, at 83:4-9, 87:21-23; Doc. No. 68-14, Dep. of J. Spruiell, at 61:24-62:20).

## National Yellow CSST Safety Campaign

38.    Omega Flex objects to this statement of fact as Plaintiff fails to support it with appropriate evidentiary foundation; it is denied that page 162 of Robert Torbin's deposition supports the premise that the purpose of the National Association of State Fire Marshal's ("NASFM") National Safety Campaign was to provide notice to subsequent homeowners' such as the Crocketts, of "the propensity for CSST to be damaged by lightning". It is further denied

that the statement contained in Paragraph 38 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims; the purpose of a National Safety Campaign run by NASFM – an entity unaffiliated with Omega Flex – is irrelevant to Plaintiff's claims against Omega Flex or Omega Flex's defenses thereto.  (Doc. No. 68-10, Dep. of R. Torbin, at 162:1-5).

39.    Admitted that Omega Flex has no means of identifying in which homes its TracPipe® CSST is installed.  (Doc. No. 68-10, Dep. of R. Torbin, at 158:23-159:23 ("[W]e don't sell directly to the plumber. Our reps sell the product to plumbing wholesalers which, in turn, sell directly to plumbers.  So, I'm two degrees of separation from the installer.  I'm three degrees of separation from where it goes in.  So, there's no possible way of my tracking this spool of tubing, and where it ends up.")).  Denied that Omega Flex controlled either the information distributed by NASFM through NASFM's National Safety Campaign or the means of dissemination.  (*Id.* at 163:16-164:4 (testifying that NASFM provided information regarding the need to directly bond yellow CSST to all fifty State Fire Marshals and the Fire Marshal for the District of Columbia, but Omega Flex had no control over whether these Fire Marshals further disseminated the information to the general public)).  It is denied that the statement contained in Paragraph 39 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims; information disseminated by a National Safety Campaign run by NASFM – an entity unaffiliated with Omega Flex – is irrelevant to Plaintiff's claims against Omega Flex or Omega Flex's defenses thereto.  (*Id.* at 162:1-5).

40.    Admitted that NASFM provided information regarding the need to directly bond yellow CSST to all fifty State Fire Marshals and the Fire Marshal for the District of Columbia.  (Doc. No. 68-10, Dep. of R. Torbin, at 163:16-164:4).  It is denied that the statement contained

in Paragraph 40 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims; information disseminated by a National Safety Campaign run by NASFM – an entity unaffiliated with Omega Flex – is irrelevant to Plaintiff's claims against Omega Flex or Omega Flex's defenses thereto.  (*Id.* at 162:1-5).

41.     Omega Flex objects to this statement of fact as Plaintiff fails to support it with appropriate evidentiary foundation; it is admitted that Mr. Torbin guessed during the course of his deposition that Arkansas is "probably" in the top quarter of U.S. national lightning frequency. It is denied that this statement creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims.

42.     Denied that NASFM did not direct any communications to the State of Arkansas; NASFM provided information regarding the need to directly bond yellow CSST to all fifty State Fire Marshal and the Fire Marshal for the District of Columbia, including the State of Arkansas. (Doc. No. 68, State Farm's Opp., Exhibit J, Dep. of R. Torbin, at 163:16-164:4).  The State Fire Marshal for the State of Arkansas did not provide any feedback that CSST and lightning fires were a concern or that Arkansas wanted to receive targeted attention from NASFM's National Safety Campaign.  (*Id.* at 167:5-16).  It is specifically denied that the statement contained in Paragraph 42 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims; information disseminated by a National Safety Campaign run by NASFM – an entity unaffiliated with Omega Flex – is irrelevant to Plaintiff's claims against Omega Flex or Omega Flex's defenses thereto.  (*Id.* at 162:1-5).

43.     Admitted that Mr. and Mrs. Crockett, subsequent purchasers of the home, testified that they did not recall receiving any warnings or communications from Omega Flex.  (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶¶ 7-8).

It is specifically denied that the statement contained in Paragraph 43 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims as Arkansas does not recognize a post-sale duty to warn. *See Hughes v. Benley Indus., LLC*, No. 11-6025, 2013 U.S. Dist. LEXIS 137494, at *5 (W.D. Ark. Sept. 25, 2013) ("Arkansas does not recognize a post-sale failure to warn claim."); *Boatman's Trust Co. v. St. Paul Fire & Marine Ins. Co.*, 995 F. Supp. 956, 962 (E.D. Ark. 1998) (granting summary judgment in the defendant's favor as to the plaintiff's postsale duty to warn claim because there is "no cause of action under Arkansas law involving any post-sale duty to warn").   It is further denied that the statement contained in Paragraph 43 creates any issue of material fact sufficient for Plaintiff to survive summary judgment on its failure to warn claims; information disseminated by a National Safety Campaign run by NASFM is irrelevant to Plaintiff's claims against Omega Flex or Omega Flex's defenses thereto.  (*Id.* at 162:1-5).

**State Farm's Subrogation Claims Against Omega Flex**

44.    Admitted.  (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶ 33).

45.    Admitted.  (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶ 34).

46.    Admitted only that State Farm alleges that Omega Flex is liable to it under theories of strict liability and negligence for selling and manufacturing allegedly defective TracPipe CSST and/or failing to warn the Crocketts and intermediaries of purported hazards associated with the same.  (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶ 37).  It is specifically denied that Omega Flex is so liable. (*See* Doc. No. 50, Omega Flex's Answer and Affirmative Defenses to Plaintiff's First Amended

Complaint; Doc. No. 52, Omega Flex's Memo in Support of its MSJ; Doc. No. 74, Omega Flex's Reply in Support of its MSJ).

47.     Admitted only that State Farm alleges Omega Flex breached the duty it owned to the Crocketts in "failing to warn consumers, including Michael and/or Holly Crockett, and intermediaries that the failure of its CSST product can cause fires." (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶ 39).   It is specifically denied that Omega Flex owed a legal duty to the Crocketts as subsequent users of the product or to the extent that such a duty existed, that it breached said duty. (*See* Doc. No. 50, Omega Flex's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint; Doc. No. 52, Omega Flex's Memo in Support of its MSJ; Doc. No. 74, Omega Flex's Reply in Support of its MSJ).

48.     Admitted only that State Farm alleges that Omega Flex breached the duty it owned to the Crocketts in "failing to warn consumers, including Michael and/or Holly Crockett, and intermediaries that the failure of its CSST product can cause fires." (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶ 39).   It is specifically denied that Omega Flex owed a legal duty to the Crocketts as subsequent users of the product or to the extent that such a duty existed, that it breached said duty. (*See* Doc. No. 50, Omega Flex's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint; Doc. No. 52, Omega Flex's Memo in Support of its MSJ; Doc. No. 74, Omega Flex's Reply in Support of its MSJ).

49.     Admitted only that State Farm alleges Omega Flex is strictly liable to State Farm for its damages in that Omega Flex failed to give adequate warnings of the products dangers that were known or by the application of reasonably developed human skill and foresight should have

been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.  (Doc. No. 69, Plaintiff's Response to Omega Flex's Statement of Uncontroverted Material Facts, at ¶ 40).  It is specifically denied that Omega Flex is so liable.  (*See* Doc. No. 50, Omega Flex's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint; Doc. No. 52, Omega Flex's Memo in Support of its MSJ; Doc. No. 74, Omega Flex's Reply in Support of its MSJ).

Respectfully submitted,

By: *s/ Erin W. Grewe*
Lynne O'Brien Ingram, Esq.
Erin W. Grewe, Esq.
PA Bar Nos. 201321/313787
CAMPBELL CAMPBELL EDWARDS &
CONROY, P.C.
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
(610) 964-1900
lingram@campbell-trial-lawyers.com
egrewe@campbell-trial-lawyers.com
(Admitted *pro hac vice*)

and

James D. Robertson, Esq.
AR Bar # 95181
BARBER LAW FIRM PLLC
3400 Simmons Tower
425 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 707-6128
jrobertson@barberlawfirm.com

*Attorneys for Defendant Omega Flex, Inc.*

**CERTIFICATE OF SERVICE**

I, Erin W. Grewe, hereby certify on this 31st day of January, I caused a copy of the

foregoing to be served via the Court's electronic filing system on all counsel of record.

By: */s/ Erin W. Grewe* _____
Erin W. Grewe, Esq. (PA Bar # 313787)