**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

STATE FARM FIRE AND CASUALTY, PLAINTIFF
as Subrogee of Michael Crockett and Holly Crockett

v. No. 4:16CV00387 JLH

OMEGA FLEX, INC. DEFENDANT

**OPINION AND ORDER**

Michael and Holly Crockett's home was severely damaged by fire in May 2015. The home was covered by a policy of homeowners' insurance issued by State Farm Fire and Casualty, which paid the loss pursuant to the policy. State Farm brings this action as subrogee of the Crocketts to recover the amount of loss from Omega Flex, Inc. State Farm alleges that a defectively designed Omega Flex product caused the fire and that Omega Flex failed to warn consumers of the product's dangers. State Farm asserts negligence and strict liability claims against Omega Flex. Omega Flex has moved for partial summary judgment on the failure-to-warn claims. Omega Flex also has moved to exclude the testimony of several State Farm experts.

Omega Flex manufactured yellow-jacketed TracPipe brand Corrugated Stainless Steel Tubing, which was installed by an unknown person in the home when it was built in 2006. Document #69 at ¶¶1-2. The TracPipe supplied natural gas to the home's gas-fired appliances, one of which was a fireplace in the study. *Id.* ¶¶3, 6. The Crocketts, who bought the house in 2008, did not know that TracPipe was installed in their home when they purchased it, nor did they receive warnings regarding risks associated with the product. *Id.* ¶8; Document #41-2 at 10.

On May 9, 2015, lightning struck near the Crocketts' home, electrical energy from the strike entered their home, and the home caught fire. Document #69 at ¶¶25, 26. State Farm contends that electrical energy from the strike entered through the gas service entrance and caused arcing between

the TracPipe in the study and a nearby HVAC duct. *Id.* ¶31. The arcing, in turn, melted a hole in the TracPipe, which allowed gas to escape and be ignited by the arcing. *Id.* Omega Flex contends that electrical energy entered the home and first ignited other combustibles. *Id.* ¶32. The fire caused copper wiring to come in contact with the TracPipe, which, in turn, caused electrical arcing between the two. *Id.* The arcing melted a hole in the TracPipe, and the escaping gas was ignited by the preexisting fire. *Id.*

At the time the TracPipe was installed in the Crocketts' home, Omega Flex says that a Design Guide and Installation Instructions was available on its website. The guide warns, "If this system is used or installed improperly, fire, explosion, or asphyxiation may result. The installation instructions and applicable local codes must be strictly followed." Document #51-3 at 3. Omega Flex says that the TracPipe was not installed according to the instructions in the installation guide available at the time of the home's construction. Both parties agree that the TracPipe was bonded only through the gas appliances' grounding conductors (three-prong plugs). Document #69 at ¶22. Omega Flex says that its installation guide required the installer to bond the TracPipe to a grounding electrode through direct connection to a bonding clamp or heavy gauge bond wire. Document #53 at ¶23. A State Farm expert, Mark Goodson, says that the installation guide can be read in two ways—as Omega Flex reads it or to permit bonding through the gas appliances' grounding conductors. Document #69 at ¶31.

The use of expert evidence in federal court is governed by Federal Rule of Evidence 702, as interpreted by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in

> the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the Court must ensure that a proffered expert is qualified by his knowledge, skill, experience, training, or education before that person may testify as an expert. The trial judge has a gatekeeping responsibility to ensure that expert evidence is both relevant and reliable. *Daubert*, 509 U.S. at 589, 113 S. Ct. at 2795; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171, 143 L. Ed. 2d 238 (1999). Regarding relevancy, the Supreme Court stated that Rule 702 requires the proffered expert testimony to have an appropriate "fit" by relating to an issue in the case and being sufficiently tied to the facts of the case. *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795-96; *see also Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 694 (8th Cir. 2001). Regarding reliability, the Supreme Court stated that the Rule 702 inquiry is a "flexible one." *Daubert*, 509 U.S. at 594, 113 S. Ct. at 2797. The inquiry should focus on the principles and methodology the expert uses and not on the conclusions generated. *Id*. at 595, 113 S. Ct. at 2797.

*Daubert* outlined four factors that should guide a district court's analysis: (1) whether the theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) in the case of a particular scientific technique, what the known or potential rate of error is and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory has received "general acceptance" in the relevant scientific community. *Id*. at 593-94, 113 S. Ct. at 2796-97. These four factors are not a "definitive checklist or test"—other facts may bear on the inquiry *Id*. at 593, 113 S. Ct. at 2796; *Kumho Tire*, 526 U.S. at 141-42, 119 S. Ct. at 1171. Courts after *Daubert* have noted additional relevant factors, including "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the

proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon*, 270 F.3d at 687 (citing cases).

The trial court's role is not to determine whether an expert's opinion is correct because Rule 702 is concerned with an expert witness's methodology, rather than his conclusions. *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). "'[E]ven if the judge believes there are better grounds for some alternative conclusion, and that there are some flaws in the scientist's methods, if there are good grounds for the expert's conclusion it should be admitted . . . .'" *Id.* (quoting *Heller v. Shaw Indus.*, 167 F.3d 146, 152-53 (3d Cir. 1999)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798. "Rule 702 favors admissibility if the testimony will assist the trier of fact, and doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (citation and quotation omitted). "Only if an expert's opinion is 'so fundamentally unsupported that it can offer no assistance to the jury' must such testimony be excluded." *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)).

Omega Flex moves to exclude Mark Goodson from offering expert testimony that Omega Flex's Design Guide and Installation Instructions can be interpreted in two ways and that a PowerPoint presentation given in 2009 by Robert Torbin incorrectly demonstrates bonding. Omega Flex argues that Goodson is not qualified to offer opinions on the adequacy of the installation instructions and that Goodson's testimony on the instructions will not help the jury understand the evidence. Goodson's testimony that the installation instructions can be read in two ways addresses

4

one of Omega Flex's defenses. Omega Flex defends, in part, on its contention that the failure was caused by TracPipe not being installed according to its instructions. The relevant portion of the instructions states:

> 1. The piping system is not to be used as a grounding conductor or electrode for an electrical system. In accordance with The National Fuel Gas Code NFPA 54/ANSI Z223, "each above ground portion of a gas piping system upstream from the equipment shutoff valve shall be electrically continuous and bonded to any grounding electrode, as defined by the National Electrical Code, ANSI/NFPA 70."
>
> 2. For bonding of the **TracPipe** system, a bonding clamp must be attached to the brass AutoFlare fitting adapter (adjacent to the pipe thread area – see Figure 4-21) or to a black pipe component connected to an AutoFlare fitting. The corrugated stainless steel portion of the gas piping system SHALL NOT be used as the bonding attachment point under any circumstances. Bonding electrode conductor sizing shall be in accordance with Article 250 of ANSI/NFPA 70. The bonding is a requirement of the National Electrical Code.

Document #51-3 at 4. According to Goodson, these instructions can be read to require bonding according to the National Electric Code, which does not require the direct bonding that Omega Flex says is required by its instructions. Goodson is a licensed professional engineer, and his focus is in electrical engineering. Goodson's qualifications and accomplishments establish that he is qualified by his knowledge, skill, experience, training, and education to testify as an expert on how instructions relating to electrical bonding would be understood. Interpreting the installation instructions is outside the common knowledge of jurors. Goodson's testimony will help jurors understand that portion of the evidence.

Goodson's testimony regarding Robert Torbin's 2009 PowerPoint presentation, however, is not relevant and must be excluded. The presentation that Goodson seeks to critique does not bear the "fit" required by *Daubert*. It was given after the installation of the TracPipe in the Crocketts' home, so the installer could not have been affected by the presentation, nor is it probative of the

instructions Omega Flex provided at the time of installation. It is not sufficiently tied to the facts of this case.

Omega Flex also moves to exclude the testimony of Dr. Elizabeth Buc,[1] Charles Keller Colwell, Johnie Spruiell, and Mark Hergenrether as to the cause of the fire. The proposed testimony of each of these experts meets the requirements of Rule 702 as interpreted by *Daubert*. The experts base their testimony upon sufficient facts, their testimony is the product of reliable principles and methods, and each has applied the principles and methods reliably to the facts of this case. Dr. Buc has used scientific principles that have been subjected to peer review and publication, as indicated by the citations to peer-reviewed publications in her report. Furthermore, it appears that she has used scientific principles that are generally accepted in the relevant scientific community. Colwell, Spruiell, and Hergenrether present a theory that can be and has been tested. They appear to have used the scientific methods reliably. Moreover, the Court has ruled that Omega Flex's expert, Dr. Harri Kytomaa, may testify on similar, if not identical, issues. Like Dr. Kytomaa, State Farm's experts are qualified to testify on these issues. Omega Flex's criticisms of these experts can be developed on cross-examination and submitted to the jury for its consideration in determining the credibility of the experts' testimony.

Turning to the summary judgment motion, a court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial

---

[1] In a reply, Omega Flex asks the Court to exclude an energy-dispersive x-ray spectroscopy analysis on which Dr. Buc offers an opinion. State Farm relied on this analysis in its response. Omega Flex says this analysis is new evidence and was not disclosed in accordance with the discovery deadlines and requests. This motion is denied. The evidence is not new. *See* Document #67-6 at 18; Document #67-7. The analysis about which Omega Flex complains is simply a report of data that has been produced to Omega Flex and known by Omega Flex.

burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id.*

State Farm contends that Omega Flex failed to give adequate instructions to avoid the fire danger associated with lightning strikes and that it failed to warn consumers that TracPipe was prone to fail from lightning strikes. Omega Flex responds that the warning and instructions provided were adequate and that even if they were not, State Farm cannot show that the lack of adequate instructions or warnings proximately caused the loss.

The Arkansas Product Liability Act provides that a manufacturer is strictly liable for harm to persons or property for supplying a product in a defective condition that renders it unreasonably dangerous if the defective condition proximately causes harm. Ark. Code Ann. § 16-116-101(a). An inadequate warning or instruction may provide the defective condition required for proof of strict liability. *Hill v. Searle Labs., a Div. of Searle Pharm., Inc.*, 884 F.2d 1064, 1066-67 (8th Cir. 1989);

7

*see also Hergeth, Inc. v. Green*, 239 Ark. 119, 123-24, 733 S.W.2d 409, 411 (1987) (failure to warn); *Hopkins v. Chip-In-Saw, Inc.*, 630 F.2d 616 (1980) (inadequate instructions). When a plaintiff proves that a product was supplied with inadequate instructions or warnings, a presumption arises that the user would have heeded the instructions or warnings. *Bushong v. Garman Co.*, 311 Ark. 228, 234, 843 S.W.2d 807, 811 (1992).

Negligence requires proof that "the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Yanmar Co. v. Slater*, 2012 Ark. 36, 16, 386 S.W.3d 439, 449 (2012) (citations omitted). Arkansas's Model Jury Instructions distinguish between negligent failure-to-warn and failure-to-instruct claims. AMI 1002 provides:

> A manufacturer of a _____((product)) has a duty to give a reasonable and adequate warning of dangers [inherent][or][reasonably foreseeable] in its use [(for a purpose) (and) (in a manner) that the manufacturer should reasonably foresee]. A violation of this duty is negligence. There is no duty, however, to warn a user of obvious dangers or those known to [him][her] or those which [he][she] should reasonably discover for [himself][herself].

Ark. Model Jury Instr., Civil AMI 1002. AMI 1003 provides:

> A manufacturer of a _____((product)) has a duty to give reasonable and adequate instructions with respect to the conditions and methods of its safe use when danger is reasonably foreseeable in its use, unless the danger is known to the user or is reasonably discoverable by [him][her]. A violation of this duty is negligence.

Ark. Model Jury Instr., Civil AMI 1003. Here, the core issue on the warnings claim is whether Omega Flex properly warned users of dangers associated with TracPipe, whereas the core issue on the instructions claim is whether Omega Flex provided adequate instructions for the safe installation and use of TracPipe.

State Farm contends that installation instructions in the relevant Omega Flex Design and Installation Guide were inadequate because they can be read in two ways. As noted above, Goodson

8

opines that the instructions can be read either to require direct bonding through a bonding clamp or bonding wire or to permit bonding through the gas appliances' grounding conductors. Regardless, State Farm contends that neither manner of installation would have prevented the loss. Goodson's report says that TracPipe is designed defectively and is unreasonably dangerous even if the direct bonding installation is used because that method would not adequately protect against lightning damage. Document #56-1 at 5, ¶¶ 15-20. Three other State Farm experts, Colwell, Spruiell, and Hergenrether, issued a report stating that direct bonding would not prevent TracPipe failure due to lightning energy. Document #56-4 at 4. State Farm has not proposed alternative instructions that would have made TracPipe safe, which follows from its experts' opinions that TracPipe failed because it was defectively designed. Document #56-1 at 5; Document #56-4 at 4; Document #51-5 at 11. On State Farm's theory of the case, the instructions, even if inadequate, were not the proximate cause of the loss. Still, State Farm's claim that the instructions were inadequate can survive as an alternative ground for relief. As noted, Omega Flex contends that its TracPipe is safe if installed according to the instructions as it construes them. If the jury were to find that the TracPipe is safe if installed as Omega Flex says that it should be installed, and if the jury were to find that the instructions can reasonably be read in two ways, then the jury might also find that inadequate instructions proximately caused the loss. State Farm's failure-to-instruct claim will not be dismissed.

Apart from State Farm's defective design claim (which appears to be its primary claim) and its claim that the installation instructions were inadequate, State Farm contends that Omega Flex breached its duty to warn users that TracPipe was prone to fail when exposed to transferred lightning energy. It argues that this duty extends to not only the original purchaser of the TracPipe but also to the Crocketts. Omega Flex counters with three arguments: (1) the warning it included regarding

9

fire danger is adequate as a matter of law, (2) even if the warning were inadequate, a proper warning would not have been heeded and, therefore, was not the proximate cause of the loss, and (3) there is no post-sale duty to warn the Crocketts.

Manufacturers are not required to give prolix warnings, but they must warn of the specific danger that a product presents. 2 Frumer & Friedman, Products Liability § 12.03[1][a] (Matthew Bender, Rev. Ed.). State Farm has submitted expert testimony and reports in support of its position that TracPipe was vulnerable to transferred electrical energy from lightning strikes. Omega Flex warned that improper installation could result in fire but it did not warn that even if the TracPipe is installed properly a nearby lightning strike could cause the TracPipe to fail and result in a fire. Whether a warning is adequate is typically a factual question for the jury, *Bushong*, 311 Ark. at 233, 843 S.W.2d at 810, and is so here.

As previously stated, Arkansas law presumes that an adequate warning will be heeded and places the burden on the defendant to rebut this presumption. To obtain summary judgment on the theory that a warning would not have been heeded, Omega Flex must produce evidence that the warning would not have been heeded, and the evidence must be "so strong that it would necessarily persuade any reasonable trier of fact that an adequate warning would have been futile." *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 844-45 (8th Cir. 2001) (applying Arkansas law). Omega Flex has not met this burden.

Finally, a manufacturer's "duty to warn duty to warn may extend beyond the purchaser to those persons foreseeably endangered by the product's use." *Hopkins*, 630 F.2d at 619. Homeowners are reasonably foreseeable users of TracPipe, so Omega Flex should have foreseen that homeowners could be endangered by TracPipe's use. Even if Omega Flex had no post-sale duty to warn, State Farm has presented evidence from which a jury could find that the breach of the duty

10

to warn the installer of the TracPipe was the proximate cause of the Crocketts' loss. *See Forrest City Mach. Works, Inc. v. Aderhold*, 273 Ark. 33, 38, 616 S.W.2d 720, 723 (1981) (explaining that a "manufacturer who fails to use reasonable care in the design and manufacture of a product is liable not only for the harm which may come to users of the product, but also for harm which may come to a person who may reasonably be expected to come into contact with the product").

## CONCLUSION

Omega Flex, Inc.'s motion to exclude certain opinions and testimony of Mark Goodson is granted in part and denied in part. Document #56. Goodson's testimony regarding Robert Torbin's PowerPoint presentation will be excluded. Otherwise, the motion to exclude the opinions and testimony of Goodson is denied. Omega Flex, Inc.'s motion to exclude certain opinions and testimony of Charles Keller Colwell, Johnie P. Spruiell, and Mark C. Hergenrether is denied. Document #60. Omega Flex, Inc.'s motion to exclude certain opinions and testimony of Dr. Elizabeth Buc is denied. Document #58. Omega Flex, Inc.'s motion for partial summary judgment on the plaintiff's failure-to-warn claims is denied. Document #51.

IT IS SO ORDERED this 1st day of February, 2018.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE